**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHASTER LANGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 07-0830-CG-C** |
| | ) | |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **TRANSPORTATION,** | ) | |
| | ) | |
| **Defendant.** | | |

**MEMORANDUM OPINION & ORDER**

This matter is before the court on the motion of defendant, Alabama Department of

Transportation ("ALDOT") for summary judgment (Doc. 53), plaintiff's opposition to the

motion (Doc. 64), ALDOT's reply (Doc. 74), and all related filings (Docs 76 through 80).  The

court finds that plaintiff has not demonstrated a prima facie case of discrimination or retaliation.

Therefore, defendant's motion for summary judgment is due to be granted.


**FACTS**

This action arises out of plaintiff, Shaster Langham's, employment with ALDOT.  The

amended complaint asserts Title VII claims against ALDOT for (1) racial discrimination, and

(2) retaliation. (Doc. 7).  Plaintiff, a black male, worked as an Engineering Assistant for ALDOT

beginning in 2001. (Doc. 7, ¶¶ 1, 5; Langham Depo. p. 40).  Plaintiff alleges that in March 2006,

he was made to take a demotion to the Professional Civil Engineering Trainee ("PCET") position

and to follow guidelines that non-minorities were not required to follow. (Doc. 7, ¶¶ 6-10;

Langham Depo. p. 37).  ALDOT reports that the PCET program is designed for potential college

civil engineering majors and that participation requires enrollment in an accredited two-year or four-year college in a pre-engineering curriculum, civil engineering program or civil engineering technology curriculum, and completion of 30 quarter hours or 20 semester hours per school year. (Woodham Affid. ¶ 4).  The PCET program provides flexibility by allowing the participant to take as many class hours during the semester or quarter as the employee feels are necessary to complete the required 30 quarter hours or 20 semester hours per any school year. (Woodham Affid. ¶ 11).

Plaintiff was encouraged to enter the PCET program as early as 2002. (Langham Depo. p. 70).  In 2005, plaintiff enrolled at the University of Mobile, majoring in the dual degree program in civil engineering and mathematics. (Langham Depo. pp. 15-16).  One of plaintiff's supervisors, Vince Calametti, reported that plaintiff had been permitted to take college classes, without taking leave, and to work a 40-hour week between the hours of 7 a.m. and 5 p.m. (Calametti Affid. ¶ 5).  In 2005, plaintiff was allowed to take an hour long college class during his lunch hour and was not required to take leave for his travel time. (Langham Depo. pp. 66-68; Jones Affid. ¶¶ 2-3).  Plaintiff stated that he came in early to accommodate for the 40 minutes of travel time. (Langham Depo. p. 68).  The next semester, plaintiff presented Vince Calametti with his new class schedule with more classes and Calametti told plaintiff he would work with him, but asked plaintiff how he was going to make his 40 hours. (Langham Depo. pp. 74-75).  Calametti reportedly told plaintiff that the only way he could do it was to enroll in the PCET program. (Langham Depo. p. 74).  Plaintiff wanted to take three classes that each met two or three times a week. (Langham Depo. p. 82).  Plaintiff and Calametti discussed making up his hours by using leave without pay. (Langham Depo. p. 83).  Plaintiff had previously applied for

the PCET program in 2002, but had been denied. (Langham Depo. pp. 84-86).  On December 9, 2005, before joining the PCET program, plaintiff signed a memorandum of understanding and ALDOT personnel went over the PCET program with plaintiff. (Langham Depo. pp. 87-89, 100). Plaintiff signed three more memoranda of understanding after entering the PCET program, dated April 3, 2006, September 1, 2006, and November 19, 2007. (Langham Depo. p. 101-102, 114). Employees who enter the PCET program are required to execute a memorandum of understanding which explains all of the requirements of the program. (Calametti Affid. ¶ 9). Plaintiff states that he was not initially aware that entering the PCET program would be a demotion, but became aware of that fact in March 2006. (Langham Depo. p. 165).  After learning that the program would constitute a demotion, plaintiff still made the decision to accept the PCET position. (Langham Depo. pp. 166, 170)

Plaintiff reports that, after entering the PCET program, he became aware that another engineering assistant, Marcus Smith, who was white, was going to school during work hours and was not enrolled in the PCET program (Langham Depo. pp. 171-173).  Plaintiff became aware in 2006 that Smith was taking college courses in business management, but did not know whether they were at night or during the day. (Langham Depo. pp. 172-173, 188).  Plaintiff also became aware in 2006 that another employee, Ashley Adams, who works in a different position, was taking classes towards a criminal justice major. (Langham Depo. pp. 173-175).  Plaintiff states that Marvin Waller, a right-of-way specialist, was going to school in 2005 and working towards a civil engineering degree. (Langham Depo. pp. 178-179).  In 2001, shortly after plaintiff began working for ALDOT, Langham became aware of Waller going to school during the day. (Langham Depo. p. 179).  He was also aware in 2002 that Gail Strickland, who works in the

3

personnel office, was going to school. (Langham Depo. pp. 179-180).  In 2004, plaintiff learned

that Belinda Hicks was going to school majoring in nursing. (Langham Depo. pp. 181-182).

Plaintiff understood that Waller and Hicks had worked for ALDOT over 20 years and had

enough annual leave to take off to go to classes. (Langham Depo. p. 183).  Plaintiff asserts that

Marcus Smith and Ashley Adams did not have enough annual leave. (Langham Depo. pp. 183-

184).  Plaintiff does not know whether Smith or Adams took leave to go to classes. (Langham

Depo. p.189).

　　　Marcus Smith attests that in 2006 he was in his last year of college and that, because

some of his classes were not offered at night, he used annual leave or compensatory time to be

absent from work to take a class. (Doc. 55-15: Smith Affid. ¶ 3).  Smith states that he had to take

annual, sick, administrative leave, or compensatory time so that he would not be charged leave

without pay. (Doc. 75-2: Smith Supplemental Affid. ¶ 5 ).  Smith was enrolled at the University

of South Alabama and completed his degree, obtaining his Bachelor of Science in Business

Administration in December 2006. (Smith Supplemental Affid. ¶ 12).  Smith enrolled in a 2 hour

finance class for the second summer term of 2006 which started on Tuesday, June 27, 2006, and

ended on Tuesday, July 25, 2006. (Smith Supplemental Affid. ¶ 7).  Smith did not attend a few

of the 2006 classes, he used his lunch hour for travel, and the classes did not always meet the full

two hours, so the time Smith took off varied. (Smith Supplemental Affid. ¶¶ 8-9).  Smith also

took two finance classes during the second summer term of 2005. (Smith Supplemental Affid. ¶

6).

　　　While enrolled in the PCET program, plaintiff worked 40 hours a week, coming in early

and staying late to make up for class time. (Langham Depo. p. 211).  Plaintiff was allowed to

4

come in a little after 6:00 a.m. (Langham Depo. pp. 211-212).  Sometimes plaintiff worked less

hours. (Langham Depo. p. 224).

ALDOT reports that it has allowed black employees to attend college classes by entering

the PCET program or by using accrued leave or compensatory time. (Calametti Affid. ¶¶ 14, 15).

At least two black employees, Marvin Waller and Rosalind Pettaway, completed college degrees

by using leave. (Calametti Affid. ¶ 15).

In September 2004, plaintiff filed a grievance against the Alabama State Personnel

Department because he was not allowed to take the Transportation Technologist (TT) exam or be

placed on the register, as he did not meet the minimum qualifications according to the State

Personnel Department. (Langham Depo. pp. 144-149, 163; Malone Affid, Doc. 67-3 Ex. B).[1]

On February 25, 2005, plaintiff sent a letter to Sandy Deitz in ALDOT's human resource

department stating that he had applied for a TT position but had been denied.   The letter to Ms.

Deitz explained plaintiff's qualifications and experience and stated that employees with less

education, experience, and responsibilities had been allowed to take the exam.  The letter then

requested that Ms. Dietz review and reconsider plaintiff's application. (Doc. 67-3, Ex. C).

Plaintiff reports that he later called Ms. Dietz seeking some word on his "grievance", but that,

when she finally returned his call, she responded in a very hostile manner telling plaintiff that

she had nothing to do with the State Personnel Department and asking plaintiff what he expected

her to do. (Doc. 67, Ex.. 1 - Langham Declaration ¶ 8).

Plaintiff  filed a grievance on December 26, 2006, with the Alabama Department of

Transportation, asserting the same complaint as the 2004 grievance with the Alabama Personnel

--------

[1] Plaintiff has since been placed on the TT registry. (Langham Depo. p. 163).

Department,  and stating that ALDOT had retaliated against him, harrassed him, and subjected him to a hostile work environment ever since filing the 2004 grievance.  (Langham Depo. pp. 154-156, Doc. 67-4, Ex. P).

Plaintiff filed an EEOC complaint on January 30, 2007, alleging that he was made to take a demotion to the PCET program. (Langham Depo. p. 164).  The EEOC complaint stated that plaintiff had made numerous complaints about job benefits being denied him while being granted to white employees and that he had been steadily harrassed and discriminated against since making these complaints (Doc. 55-3, p. 54, EEOC charge).

Plaintiff states that after he filed his 2004 and 2006 complaints, he suffered harassing and discriminatory treatment. (Langham Depo. pp. 193-194).  Plaintiff states that he also filed verbal complaints with his supervisors about the incidents. (Langham Depo. pp. 194-195).  Plaintiff states that he verbally complained to management about several incidents, including incidents that took place on April 5, 2005, May 4, 2005, May 6, 2005, May 20, 2005, August 1, 2005. (Langham Depo. pp. 196-199).

In September 2006, plaintiff received a written counseling for leaving work early to go to school (Langham Depo. p. 204).  The written reprimand was later reduced to an oral counseling. (Langham Depo. p. 206).   In 2006 or 2007, plaintiff was also written up twice for not turning in a schedule on time. (Langham Depo. pp. 207-208).  Plaintiff explained that he followed the memorandum of understanding and did not follow the instructions of his supervisor: to give his supervisor a copy of his schedule. (Langham Depo. pp. 208-209). Plaintiff also filed a grievance on May 16, 2007, alleging racial harassment. (Langham Depo. p. 150).  The May 16, 2007, grievance was resolved by plaintiff receiving oral counseling instead of a written reprimand.

(Langham Depo. p. 150-153).

Plaintiff reports that he was also given menial work like putting stickers on signs and taking fliers out to gas stations, he had to run profilographs, and was harassed continually on the job. (Langham Depo. pp. 214, 224).  Plaintiff had to do philographs when he worked on Austin Harville's project, but plaintiff requested a transfer out of Harville's project and his transfer was granted. (Langham Depo. pp. 224-225).  Plaintiff's last two evaluations were "meets standards" and all of his prior evaluations were "exceeds standards". (Langham Depo. p. 215).  However, under the PCET program, plaintiff was graded on his transcript or class grades, so some of the job duties plaintiff was being graded on were different. (Langham Depo. p. 216).

Plaintiff also claims that in 2005 or 2006, he was transferred to the field project office in retaliation for filing complaints. (Langham Depo. pp. 220-221, 228).  Plaintiff states that he was harassed by Mr. Crow in 2005 (Langham Depo. pp. 221-222).  In September 2006, plaintiff was made to come in on one of his off days to count sandbags. (Langham Depo. p. 222).  In 2007, after having been assigned a truck for use while at work to drive to construction sites, plaintiff's truck was reassigned to Walter Crow. (Langham Depo. pp. 242-243).  Plaintiff had been assigned a truck shortly after he was assigned to the field, before that he was an office person and was not required to go out in the field. (Langham Depo. p. 245).  Plaintiff believes the truck was reassigned in retaliation for plaintiff having filed this lawsuit. (Langham Depo. pp. 246-247).  However, since the truck was reassigned, plaintiff has had access to and drove a truck daily until about a month before his deposition. (Langham Depo. pp. 300-301).  Plaintiff was only without a truck to drive and had to ride with other employees for about two to three weeks. (Langham Depo. pp. 300-302).  Plaintiff also claims that since September 14, 2006, he has been

7

the only PCET employee that has had to use sign in and out sheets. (Langham Depo. p. 302).

Plaintiff wanted to continue taking classes and complete his degree but could not finish at night. (Langham Depo. p. 266).  Plaintiff understood that he had to use annual leave to take classes during work hours, unless he was in the PCET program, and plaintiff did not have sufficient annual leave to take classes. (Langham Depo. pp. 276-277).  In June 2008, plaintiff did not complete the requirements outlined in the memorandum of understanding - he did not complete 20 hours of college credit in a 12 month period - and his position as a PCET was terminated. (Calametti Affid. ¶¶ 16, 17).  Plaintiff was allowed to return to the classification of Engineering Assistant at his current salary and is being allowed to take college classes using leave. (Calametti ¶ 17).


**LEGAL ANALYSIS**

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56© provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly

8

probative, summary judgment may be granted." <u>Anderson</u>, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>See</u> <u>Anderson</u>, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. <u>O'Ferrell v. United States</u>, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56©, the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 524 (11th Cir.1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

The amended complaint asserts Title VII claims against ALDOT for (1) racial discrimination, and  (2) retaliation.

**1. Racial Discrimination**

A  plaintiff may prove discrimination or retaliation by relying on either direct, circumstantial, or statistical evidence.  See Walker v. Nationsbank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).   Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" Hamilton v. Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential Treatment,132 F.3d 635, 641 (11th Cir. 1998)).  As the U.S. District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlate to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)). Plaintiff has submitted no direct evidence of discrimination or retaliation.  None of the evidence offered proves without inference or presumption that the person who made the employment decisions did so based on plaintiff's race.  Plaintiff has also not attempted to show discrimination through statistical evidence, but relies instead on circumstantial evidence.

A plaintiff may attempt to show discrimination based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas

10

framework, a plaintiff must first raise an inference of discrimination by establishing a <u>prima facie</u> case. <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1527-28 (11th Cir.1997)).

> In order to make out a <u>prima facie</u> case of discrimination, a plaintiff must show:
>
> (1) []he is a member of a protected class; (2) []he suffered an adverse job action; (3) [his] employer treated similarly situated employees outside h[is] classification more favorably; and (4) []he was qualified to do the job.

<u>Barnes v. Crowne Investments, Inc.</u>, 391 F.Supp.2d 1108, 1115 (S.D. Ala. 2005) (citations omitted).

The first prong is satisfied as it is undisputed that plaintiff is a member of a protected class. Defendant does dispute the second and third prongs: that plaintiff suffered an adverse job action and that similarly situated employees outside his classification were treated more favorably. Plaintiff claims that he was forced to enter the PCET program in order to take classes during the day, while white employees were allowed to take day classes without having to use annual leave or enter into the PCET program. It is not completely clear that being placed in the PCET program is an adverse action, since plaintiff applied for the program even after he knew that it would constitute a demotion. The action to which plaintiff objects is more appropriately framed as ALDOT not allowing plaintiff to take the classes during work hours without taking leave or using compensatory time to make up for all of the work time he would miss. For that reason, plaintiff allegedly had no choice, if he was to take the classes, other than to enter into the PCET program. As a result, plaintiff was demoted and, although plaintiff's salary and responsibilities did not change, there is evidence that plaintiff did not receive later salary increases that he would have received if he had not entered into the program.

"While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." <u>Shannon v. BellSouth Telecommunications, Inc.</u>, 292 F.3d 712, 716 (11th Cir. 2002) (quoting <u>Bass v. Bd. of County Comm'rs</u>, 256 F.3d

1095, 1118 (11th Cir. 2001)).  Thus, looking at the facts in the light most favorable to plaintiff, the court finds that having to enter the PCET position was an adverse job action.

As to whether similarly situated employees outside his classification were treated more favorably, plaintiff testified that he believed several white employees were allowed to take classes during the day  without entering the PCET program and without having to use annual leave.  Defendant contends that none of these employees were similarly situated.

To be appropriate comparators, the employees must be "similarly situated in all aspects." Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997).  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (internal citations omitted).  Plaintiff asserts that Marcus Smith is a similarly situated comparator who was allowed to take courses during work hours without sufficient leave time to cover his absences from the job. (Doc. 64 pp. 5-7, 14-17, Doc. 77-2 p. 3-6).  The court questions whether Smith is similarly situated; he was not eligible to participate in the PCET program because he was not pursuing an engineering degree.  Plaintiff argues that Smith was treated more favorably because he was allowed to take classes during work hours by using leave and compensatory time.  However, plaintiff himself had also been permitted to take classes during work hours using his lunch hour and coming in early to make up the time, when he was not in the PCET program. Although plaintiff asserts that he does not believe Smith had sufficient annual leave to make up for a two hour class and travel time, plaintiff's argument is based on his own estimates of the amount of time Smith would have needed for a 2006 class which lasted just over a month, and the amount of annual leave Smith would have received during that time period.  Plaintiff estimates that Smith would have needed a total of 63 hours to attend the class in 2006.  However, the evidence indicates that Smith's classes did not always last a full two hours, that Smith did not attend every class, and that Smith used compensatory time to make up the difference.   Smith reports that he did not attend 4 classes and that he used 20 hours of annual leave during that time

12

period - leaving 31 hours unaccounted for by plaintiff's calculation.  However, Smith reports that he used compensatory time as well - his lunch hour would account for 20 hours during the 4 week period and Smith could have come in early or stayed late to make up the time the remaining 11 hours.  Plaintiff's calculations also do not take into account the fact that Smith reports that the classes did not always meet for a full two hours.  Plaintiff points to discrepancies in Smith's time off :  that some of the annual leave was not taken during the time of day in which Smith's class was held.  However, even if much of the annual leave was not spent on Smith's class, the time could have been made up with more compensatory time.

Plaintiff also makes much of the fact that Smith apparently used sick leave to attend his final exam, rather than using annual leave.  However, there is no evidence that Smith's supervisors approved of or were even aware that Smith used sick leave for that purpose.  Moreover, while plaintiff reports that he was never told that he could use sick time, there is no evidence that plaintiff ever asked to use sick time or that plaintiff was ever told that he could not use sick time.  Plaintiff was merely advised that he should consider the PCET program because his supervisor was not sure plaintiff would be able to make up enough hours using leave and compensatory time to cover the three classes plaintiff intended to take.

Plaintiff attempts to make the same arguments with regard to Smith's class during the summer term of 2005.  Plaintiff speculates that Smith would have needed to take off 100 hours to take the two courses he took in 2005 and that Smith only reported 62 hours of leave.  However, there is no evidence regarding the amount of time Smith made up with compensatory time, whether Smith attended all of the classes, or whether the classes regularly met for the full scheduled time.  Plaintiff has not shown that any non-minority employee was allowed to take classes during working hours without using leave or compensatory time. Since plaintiff had also been allowed to take classes during work hours using leave and compensatory time, the court finds that plaintiff has not demonstrated that similarly situated employees outside his classification were treated more favorably.  Accordingly, plaintiff has not established a _prima_

facie case of discrimination.

Defendant challenges the timeliness of plaintiff's claims.  He filed his EEOC claim on January 30, 2007.   Under Title VII, an employee is required to file a charge of discrimination with the EEOC within 180 days of the alleged act of discrimination.  See 42 U.S.C. § 2000e-5(e). A federal employee may then commence a Title VII civil action "[w]ithin 90 days of receipt of notice of final action taken by a[n] ... agency...." 42 U.S.C. § 2000e-16.  Plaintiff asserts that his claim is timely because he did not know that white employees were allowed to take classes without entering the PCET program until January 2007, and, therefore, had no reason to know that he had been discriminated against until January 2007.  However, plaintiff testified that he was aware other white employees were taking classes even before plaintiff entered the PCET program in March 2006.  Plaintiff maintains that he did not know at that time whether these employees were using annual leave.  However, in March 2006, plaintiff was generally aware of the positions most of the employees held and the length of time they had been working for ALDOT and had the same information available to him about these employees as he did in January 2007.  Plaintiff concluded that Smith was treated more favorably because plaintiff estimated that the amount of leave time Smith would have received was insufficient to cover the amount of class time Smith took off.  Plaintiff has not explained why, in January 2007, plaintiff was suddenly able to estimate these times and determine that Smith had insufficient leave, but was unable to do so prior to that time.  Thus, plaintiff's discrimination claim also appears to be untimely.

Even if plaintiff's discrimination claims were timely and plaintiff could establish a prima facie case, the court finds that his discrimination claim would still fail.  If plaintiff could establish a prima facie case of discrimination, the burden would then shift to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action.  The employer's burden is exceedingly light." Hamilton, 122 F.Supp.2d at 1280 (quoting Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)).  If the

defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. Id.   "At the pretext stage, in order to survive summary judgment, Plaintiff[s] must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538).  Plaintiff may do this  "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." Id. (citations omitted).  "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539).  The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the adverse employment action was on account of race, a plaintiff need not establish that race was the sole reason for the action, but that it was a determinative factor in the employer's decision. See Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982) (citing Haring v. CPC International, Inc., 664 F.2d 1234, 1239-40 (5th Cir. 1981)).  However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Chapman, 229 F.3d at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." Chapman, 229 F.3d at 1030.

In this case, defendant has clearly met its burden of proffering a legitimate, non-

discriminatory reason for requiring that plaintiff enter the PCET program if he wanted to continue working full time and take more time off for classes than he could make up with leave and compensatory time. ALDOT uses the PCET program to foster young college students who are interested in careers in civil engineering. ALDOT promotes the study of civil engineering because it is in the business of maintaining and constructing highways and employs civil engineers for such tasks. Although plaintiff contends that he was required to enter the PCET program in order to take the case load he desired, the program is not mandatory and is intended to provide civil engineering students with more flexibility. ALDOT had obvious legitimate business reasons for not allowing plaintiff , or any other employees, to take classes without using leave or compensatory time. Thus, plaintiff has proffered legitimate non-discriminatory reasons for its actions. The burden shifts back to plaintiff to show that the ALDOT's proffered reasons are pretextual.

      After reviewing the evidence, the court finds that plaintiff has failed to offer sufficient evidence for a fact finder to conclude that the proffered reasons were not the actual motivation for ALDOT's actions. The evidence clearly supports ALDOT's proffered reasons. ALDOT allowed plaintiff to take classes using leave and compensatory time and has allowed other black employees to do the same. It was only when the volume of plaintiff's classes exceeded the amount of accrued leave and available compensatory time that plaintiff was "forced" to enter the PCET program. Plaintiff's supervisor told plaintiff he would work with him, but the supervisor did not think plaintiff could make 40 hours without taking advantage of the PCET program. Plaintiff was counseled and made aware that the PCET program constituted a demotion, but plaintiff still chose to enter into the program, rather than to cut back on the classes he was taking or take leave without pay. The court finds that plaintiff has not demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in ALDOT's proffered legitimate reasons that a reasonable factfinder could find them unworthy of credence. Therefore, even if plaintiff's discrimination complaint is not time barred, and even if plaintiff could

16

demonstrate a <u>prima facie</u> case, summary judgment is due to be granted in favor of defendant on plaintiff's discrimination claim.

### 2. Retaliation

"[T]he same analytical framework applies to retaliation claims as applies to other employment discrimination claims, including the availability of the <u>McDonnell Douglas</u> presumption." <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1305 (11th Cir. 1999) (citation omitted). As with plaintiff's discrimination claim, plaintiff has proffered no direct or statistical evidence of retaliation. Thus, plaintiff relies on the <u>McDonnell Douglas</u> burden shifting analysis.

> A <u>prima facie</u> case of retaliation under Title VII requires the plaintiff to show that: (1) []he engaged in an activity protected under Title VII; (2) []he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. <u>Pennington v. City of Huntsville</u>, 261 F.3d 1262, 1266 (11th Cir. 2001).

<u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008).

Plaintiff testified regarding a wide array of allegedly retaliatory actions, but concedes in his brief that some of the events about which he complains are outside the statute of limitations. (Doc. 76-2, p. 24). According to plaintiff, "beginning with his complaint to Sandy Deitz, and continuing with his complaints to Calametti and Brown, he has been the target of retaliatory conduct." (Doc. 76-2, p. 24). Plaintiff asserts that the first retaliatory conduct not barred by the statute of limitations was the disciplinary action taken against him on September 14, 2006. In September 2006, plaintiff received a written counseling for leaving work early to go to school. The written reprimand was later reduced to a an oral counseling. Plaintiff testified at his deposition that he had verbally complained to management about several incidents, including incidents that took place on April 5, 2005, May 4, 2005, May 6, 2005, May 20, 2005, and August 1, 2005. Plaintiff also sent a letter dated February 25, 2005, to Sandy Dietz in human resources requesting that she review and reconsider his application for a TT position. Internal complaints

17

about racial discrimination are statutorily-protected activities.  See Pipkins v. City of Temple Terrace, Fla, 267 F.3d 1197, 1201 (11th Cir. 2001).  However, there is no indication that plaintiff asserted that he was being racially discriminated against when he complained to management. The letter to Ms. Dietz does not mention racial discrimination and merely requests that his application be reconsidered. Although plaintiff now believes the incidents were racially motivated, the evidence does not demonstrate  that plaintiff expressed such beliefs in his complaint to Ms. Dietz or in his verbal complaints to management.

Plaintiff also testified that he filed a grievances, one in November 2004 with the Alabama State Personnel Department,  and then again in December 2006 with ALDOT  because he was not allowed to take the Transportation Technologist (TT) exam or to be placed on the register because he did not meet the minimum qualifications.  He does not explain how either of these complaints amounts to statutorily protected activity or unlawful employment practices.   The December 2006 grievance could not be the basis for the September 14, 2006, conduct, since the conduct occurred prior to the 2006 grievance.  The 2004 grievance is so remote from the alleged retaliatory conduct that there is not likely to be any causal connection.  In addition, that complaint was not filed with the defendant in this action.  The February 2005 complaint to Ms. Dietz and the verbal complaints to management in 2005 are also remote, as they occurred more than a year prior to the alleged retaliatory conduct.

Plaintiff asserts that the passage of time does not necessarily bar a plaintiff's retaliation claim if additional evidence establishes the retaliatory motive.  Plaintiff points to evidence that he believes calls into question the propriety of the September 14, 2006, disciplinary action. Plaintiff was disciplined based on the statements by two employees that plaintiff was seen leaving his job station when he was supposed to be working and did not report all of his time off. The written statements by both employees use identical language and punctuation and were prepared after the counseling event as memos to the file.  However, the court does not find this to be evidence of a causal connection.  The fact that written statements were not prepared until

18

later and that they were identical merely shows that ALDOT did not document the employees'

statements prior to confronting plaintiff.  Plaintiff also contends that Marcus Smith would also

leave the job site for several hours to attend classes without sufficient leave and was not

disciplined.  However, as discussed above regarding plaintiff's discrimination claim, Smith did

take time off and also use compensatory time.  If there were any improprieties with Smith's

reporting of his leave, there is no evidence that ALDOT was aware of the improprieties.

Plaintiff also states that less than 30 days after his December 2006 grievance, Mr. Lee Reach, the

Division Bridge Operations Engineer, responded to an email from plaintiff requesting a copy of

his file as follows:

> There is no PCET file.  The only official file on you or any other person in the
> division is in personnel.  You may obtain a copy of those files by contacting Mrs.
> Jeannette Brown at ext 218 and following ALDOT policy as set forth by the
> Legal Bureau.
>
> Should you have any questions or need additional information regarding this
> matter please advise."

(Doc. 67-5).  Plaintiff contends that the statement that there is no PCET file is false, because

other management personnel copied memos to the file.  However, the court finds this fails to

indicate a causal connection between the disciplinary action in September 2006 and plaintiff

having filed a grievance in 2004.  Mr. Reach's email response does not constitute an adverse

action itself and does not have any connection to the prior disciplinary action.  The email simply

indicates who plaintiff should contact to get a copy of his file.  Whether there is a file called a

"PCET file" has little relevance.  There is no evidence that plaintiff was unable to obtain a copy

of his file, or that anything was missing from his file.  Thus, the court finds plaintiff has failed to

show any causal connection between the September 14, 2006, discipline and any prior protected

activity.

The only other allegedly retaliatory conduct that occurred after September 14, 2006,[2] is

---

[2] As stated above, plaintiff conceded that the September 14, 2006, conduct was the first
action that occurs within the statute of limitations. (Doc. 76-2, p. 24).

plaintiff having to come in on one of his off days in 2006 to count sandbags, having his truck reassigned in 2007, and having to use a sign-in and sign-out sheet after he was disciplined for falsifying his time card in 2006.   After reviewing the evidence, the court finds that these acts were not sufficiently adverse to be actionable.  To maintain a claim of retaliation, the alleged adverse action must be "materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). Additionally, having to come in on his day off in 2006 and having to use a sign-in and sign-out sheet after September 14, 2006, are too remote to be causally connected to the prior complaints.[3] The court finds that plaintiff has not presented a prima facie case of retaliation.

## CONCLUSION

For the reasons stated above, the motion of defendant, Alabama Department of Transportation, for summary judgment (Doc. 53) is **GRANTED**.

**DONE and ORDERED** this 10th day of November, 2008.

/s/  Callie V. S. Granade

CHIEF UNITED STATES DISTRICT JUDGE

---

[3] The court notes that plaintiff contends that the reassignment of his truck in 2007 was in retaliation for the filing of this lawsuit on November 28, 2007, and thus, is not as remote as the other alleged retaliatory conduct.  However, as stated above, the court finds the reassignment of plaintiff's truck is not materially adverse.  Plaintiff had only been assigned a truck for a short while and after the truck was reassigned, plaintiff had access to a truck to drive daily. Plaintiff was only without a truck to drive and had to ride with other employees for about two to three weeks.